# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| LUIS MORALES, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiff,<br> v.<br><br>MARKOFF LAW, LLC and SNAP-ON CREDIT CORPORATION,<br><br>    Defendants. | Case No.: 19-cv-1815<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Luis Morales is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff, a debt incurred for personal, family, or household purposes.

5. Plaintiff is also a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the debt arose from a consumer transaction that included agreements to defer payment.

6. Defendant Markoff Law Office, LLC. ("Markoff") is a law firm with its principal offices located at 29 North Wacker Drive, Suite 1010, Chicago, IL 60606.

7. Markoff is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Markoff is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

9. Markoff is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

10. Defendant Snap-on Credit Corporation ("Snap-on") is a foreign corporation with its primary offices located at 1025 2801 80th Street, Kenosha, WI 53141.

11. Snap-on is engaged in the business of a collection agency, using the mails and telephone to collect debts incurred as a result of a consumer transaction.

12. Snap-on is a debt collector as defined in Wis. Stat. § 427.103(3).

## FACTS

13. On or about June 19, 2018, Plaintiff entered into an agreement with Snap-on for the purchase of a used stainless steel toolbox, model # KRL7022[1] in the amount of $6,300.02. A copy of an invoice memorializing this agreement is attached to this complaint as Exhibit A.

14. At the time of the purchase, Plaintiff was working at Toor Auto Service, Inc. as an independent contractor. The sale referenced in Exhibit A took place at that shop.

15. Plaintiff purchased the toolbox for his personal use.

16. Plaintiff purchased the toolbox on credit.

---

[1] *See* https://shop.snapon.com/product/KRL7022-Series-Roll-Cabs/54%22-11-Drawer-Double-Bank-Masters-Series-Stainless-Steel-Top-Roll-Cab-(Royal-Blue)/KRL7022DPCM1 (last accessed December 11, 2019).

2

17. Plaintiff purchased the toolbox on his own credit, and not on the credit of any other person or entity.

18. Plaintiff did not purchase the toolbox on behalf of any limited liability company, corporate entity, or partnership.

19. Plaintiff was not reimbursed for the toolbox and did not have or expect to enter into any agreement with any other party to reimburse Plaintiff for the toolbox.

20. Because Plaintiff's purchase of the toolbox was for personal use, was consummated as a result of a face-to-face solicitation away from a regular place of business of the merchant, and involved the extension of credit, the purchase was a "Consumer Approval Transaction" under Wis. Stat. § 423.201.

21. Plaintiff had the right to rescind the Consumer Approval Transaction "until midnight of the 3rd business day after the merchant has given the notice to the customer in accordance with s. 423.203." Wis. Stat. § 423.202(1).

22. Wis. Stat. § 423.203 provides:

(1) Whenever a customer has the right to cancel a consumer approval transaction, the merchant shall give 2 copies of a typed or printed notice of that fact to the customer. The notice must:

   (a) Be printed in capital and lowercase letters of not less than 12-point boldface type;

   (b) Appear under the conspicuous caption: "CUSTOMER'S RIGHT TO CANCEL";

   (c) Read as follows: You may cancel this agreement by mailing a written notice to (insert name and mailing address of seller) before midnight of the third business day after you signed this agreement. If you wish, you may use this page as that notice by writing "I hereby cancel" and adding your name and address. A duplicate of this page is provided by the seller for your records.

3

23. Neither Snap-on, nor its sales representative, ever provided notice of Plaintiff's right to cancel the transaction to Plaintiff.

24. About one day after receiving the toolbox, Plaintiff notified the salesperson who sold Plaintiff the toolbox that he repudiated the agreement upon realizing it imposed an exorbitant rate of interest.

25. Snap-on and/or its sales representative took possession of the toolbox within a week of such notification. Prior to surrendering the toolbox, Plaintiff did not use the toolbox.

26. Despite having taken possession of the toolbox, which was used at the time it was sold to Plaintiff, Snap-on claimed that Plaintiff owed Snap-on a deficiency balance in the amount of $3,446.00.

27. On or about September 2017, 2018, Snap-on sent Plaintiff a letter seeking to collect the alleged deficiency balance. The letter identifies an account number ending in 5541, which corresponds to the account listed on Exhibit A. A copy of this letter is attached to this Complaint as Exhibit B.

28. On or around July of 2019, Plaintiff encountered the Snap-on salesperson who sold him the toolbox while visiting his friend, an owner of Authentic Automotive LLC, at his shop located on 4969 South Packard Avenue in Cudahy, WI.

29. Shortly after the salesperson left the shop, Plaintiff's friend received a telephone call on his personal cellular telephone from a Snap-on representative calling from the corporate office.

30. During the telephone call, the Snap-on representative inquired as to whether Plaintiff was currently employed by Authentic Automotive LLC. After being informed that he

4

was not an employee, the Snap-on representative informed Plaintiff's friend that Plaintiff "owes Snap-on money."

31. A few months later, on or about September 17, 2019, Markoff mailed a debt collection letter to Plaintiff regarding the same alleged debt owed to Snap-on. A copy of this letter is attached to this Complaint as Exhibit C.

32. Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

33. Upon information and belief, Exhibit C is a form debt collection letter used by Markoff to attempt to collect alleged debts.

34. Upon information and belief, Exhibit C is the first written communication Markoff mailed to Plaintiff regarding the alleged debt referenced in Exhibit A.

35. Exhibit C includes the following representation which largely reflects the statutory validation notice that the FDCPA, 15 U.S.C. § 1692g, requires the debt collector mail the alleged debtor along with, or within five days of, the initial communication:

> Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing within thirty days from receiving this notice that you dispute the validity of this debt, or any portion thereof, this office will obtain verification of the debt or obtain a copy of a judgment and mail you a copy of such judgment or verification. If you request of this office in writing within thirty days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor.

36. Exhibit C also includes the following representation:

> RE: Creditor: SNAP-ON CREDIT LLC
> Amount of Debt: $3,587.90
> Our File No.: ■7824
> Other Ref. No.: XXXXX5541

37. By attempting to collect the alleged deficiency balance after Plaintiff cancelled the transaction, Markoff sought to collect an amount not permitted under Wisconsin law.

5

38. Furthermore, Exhibit C seeks to collect an amount in excess of the amount of the alleged deficiency owed to Snap-on.

39. Plaintiff was confused and misled by Exhibit C.

40. The unsophisticated consumer would be confused and misled by Exhibit C.

### ***The FDCPA***

41. The FDCPA creates substantive rights for consumers; certain violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after Spokeo, have rejected similar challenges to standing in FDCPA cases.") (citing *Hayes v. Convergent Healthcare Recoveries, Inc., 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); Long v. Fenton & McGarvey*

*Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes … do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

42. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

43. Misrepresentations of substantive information about the debt collector or the debt, including the debt collector's licensing status in Wisconsin, injures or risks injury to interests expressly protected by Congress in the FDCPA. *See Oloko v. Receivable Recovery Servs.*, 2019 U.S. Dist. LEXIS 140164 (N.D. Ill. Aug. 19, 2019); *Encore Receivable Management, Inc.*, 18-cv-1484-WED, 2019 U.S. Dist. LEXIS 134377 (E.D. Wis. Aug. 9. 2019); *Richardson v. Diversified Consultants*, No. 17-cv-4047, 2019 U.S. Dist. LEXIS 118786 *10-11 (N.D. Ill. July 17, 2019) ("the receipt of a communication misrepresenting the character of the debt (here, the amount owed) is the kind of injury that Congress sought to prevent through the FDCPA. 'Such an injury falls squarely within the ambit of what Congress gave consumers in the FDCPA: 'a legally protected interest in certain information about debts,' with 'deprivation of information about one's debt (in a communication directed to the plaintiff consumer) a cognizable injury.'" (internal citations omitted); *see also Pierre v. Midland Credit Mgmt., Inc.*, 2017 WL 1427070, at *4 (N.D. Ill. Apr. 21, 2017); *Saenz v. Buckeye Check Cashing of Illinois*, 2016 WL 5080747, at *1-2 (N.D. Ill. Sept. 20, 2016); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 72 (N.D. Ill. 2016) (holding that Plaintiff had standing to challenge misleading communication sent to him because the communication violated his "right to be free from such misleading communications"). Such misrepresentations may cause consumers to make incorrect decisions about their finances or make payments to incorrect parties.

44. 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

45. 15 U.S.C. § 1692e(2)(A) specifically prohibits: "The false representation of---the character, amount, or legal status of any debt."

8

46. 15 U.S.C. § 1692e(5) specifically prohibits "The threat to take any action that cannot legally be taken or that is not intended to be taken."

47. 15 U.S.C. § 1692e(10) specifically prohibits "the use of any false representation or deceptive means to collect or attempt to collect any debt."

48. 15 U.S.C. § 1692f generally prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

49. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

50. 15 U.S.C. § 1692g(a) provides that:

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

### *The WCA*

51. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

52. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

53. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

54. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

55. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

56. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

57. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

58. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell*

*Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

59. Wis. Stat. § 427.104(1)(e) states that a debt collector may not: "Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information, but this paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute."

60. Wis. Stat. § 427.104(1)(f) states that a debt collector may not: "Disclose or threaten to disclose information concerning the existence of a debt known to be reasonably disputed by the customer without disclosing the fact that the customer disputes the debt."

61. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

62. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

63. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

64. A merchant's failure to provide proper notice of the consumer's right to cancel a consumer approval transaction, or a debt collector's violation of any part of Wis. Stat. § 427.104(1), is a violation subject to Wis. Stat. § 425.304. Wis. Stat. §§ 423.203(4); 427.105(1).

## COUNT I – FDCPA

65. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

66. Count I is brought against Defendant Markoff.

67. By attempting to collect the alleged deficiency balance after Plaintiff cancelled the transaction, Exhibit C seeks to collect an amount not permitted under Wisconsin law.

68. Furthermore, Exhibit C seeks to collect an amount in excess of the actual amount of the alleged deficiency owed to Snap-on.

69. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, 1692f(1), 1692g(a)(1).

## COUNT II – WCA

70. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71. Count II is brought against Defendant Markoff.

72. By attempting to collect the alleged deficiency balance after Plaintiff cancelled the transaction, Exhibit C claims a right with knowledge or reason to know such a right does not exist and which could reasonably be expected to threaten or harass Plaintiff.

73. Furthermore, Exhibit C seeks to collect an amount in excess of the amount of the alleged deficiency owed to Snap-on.

74. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT III – WCA

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. Count III is brought against Defendant Snap-on.

77. Defendant failed to provide Plaintiff with notice of his three-day right to cancel the transaction at issue in this action.

78. Defendant also failed to honor Plaintiff's cancellation of the transaction, despite Plaintiff rescinding the transaction within three days even without receiving notice.

79. Defendant violated Wis. Stat. § 423.203.

## COUNT IV – WCA

80. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

81. Count IV is brought against Defendant Snap-on.

82. By claiming a deficiency balance on goods which were surrendered immediately after delivery, Snap-on is engaging in conduct which can reasonably be expected to harass the customer and claiming a right with reason to know such a right does not exist.

83. Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## COUNT V – WCA

84. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

85. Count V is brought against Defendant Snap-on.

86. By sharing the existence of a purported debt to a third party, Snap-on disclosed information affecting a customer's reputation with knowledge or reason to know that such person does not have a legitimate business need for the information

87. Defendant violated Wis. Stat. §§ 427.104(1)(e), 427.104(1)(f), 427.104(1)(g), 427.104(1)(h), and 427.104(1)(j).

## CLASS ALLEGATIONS

88. Plaintiff brings this action on behalf of two proposed classes:

89. Class I consists of: (a) all natural persons in the State of Wisconsin (b) to whom Defendant Markoff sent a collection letter in the form of <u>Exhibit C</u> to the complaint in this action, (c) attempting to collect a debt owed to "Snap-on.," where the recipient of the letter purchased merchandise from Snap-on but cancelled the agreement within three days of the date of purchase, (d) where the collection letter was mailed between December 11, 2018 and December 11, inclusive, (e) and was not returned by the postal service.

90. Class II consists of: (a) all natural persons in the State of Wisconsin, (b) who purchased merchandise from Snap-on and cancelled the agreement within three days of the date of purchase, (c) against whom Snap-on sought to collect a deficiency balance, (e) between December 11, 2018 and December 11, 2019, inclusive.

91. Each class is so numerous that joinder is impracticable. On information and belief, there are more than 50 members of each class.

92. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Defendants' communications violates the FDCPA and/or the WCA.

93. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

94. Plaintiff will fairly and adequately represent the interests of the class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

95. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

96. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) declaratory relief;

(b) injunctive relief;

(c) actual damages;

(d) statutory damages;

(e) attorneys' fees, litigation expenses and costs of suit; and

(f) such other or further relief as the Court deems proper.

Dated: December 11, 2019

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN (1097673)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com